**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2022 AUG -1 P 3 33

CAROL L. MICHEL
CLERK

JACQUES L. SOUDELIER,
     Plaintiff,

Case No. _____

v.

*Office of the Secretary of State* ~~DEPARTMENT OF STATE~~ LOUISIANA,
R. KYLE ARDOIN SECRETARY OF STATE
     Defendants.

_____/

**22-2436**

**SECT. R MAG 2**

Jacques L. Soudelier, Pro Se
1344 Hickory Ave. Apt B
Harahan, LA, 70123
(985) 709-7755
jacquessoudelier@gamil.com

_____/

## COMPLAINT AND REQUEST FOR EMERGENCY INJUNCTION

TENDERED FOR FILING

AUG 01 2022

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

X Fee $402.00 Receipt# LAE073939
___ Process_____
X Dktd_____
___ CtRmDep_____
___ Doc.No._____

1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JACQUES L. SOUDELIER,
      Plaintiff,

v.

*Office of the Secretary of State* ~~DEPARTMENT OF STATE~~ LOUISIANA,
R. KYLE ARDOIN SECRETARY OF STATE
      Defendants.
_____/

Jacques L. Soudelier, Pro Se
1344 Hickory Ave. Apt B
Harahan, LA, 70123
(985) 709-7755
jacquessoudelier@gamil.com
_____/

Case No. _____

**22-2436**

**SECT.R MAG2**

**COMPLAINT AND REQUEST FOR EMERGENCY INJUNCTION**

TENDERED FOR FILING

AUG 01 2022

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

TABLE OF CONTENTS

Index of Authorities ...…………………………………………………………………iii, iv, v

Complaint and Request for Emergency Injunction…………………………………..…………... 1

Parties, Jurisdiction, and Venue………………………………………………………………… 1

General Allegations………………………………………………………………………… 2

Standing……………………………………………………………………………………. 3

Count I. Unaccredited Electronic Voting Systems,
Violation of the Louisiana Election Laws & HAVA Act ...………………………………………... 4

      Unaccredited Voting System Text Laboratories…………………………………………... 4

      HAVA Act Election Software Whistleblower …………………………………………… 9

Count II. 52 USD Ch. 207 §20701 and §20705, Election Records Retention …………………. 12

Conclusion………………………………………………………………………………… 13

Prayer for Relief……………………………………………………………………………... 14

# INDEX OF AUTHORITIES

**<u>CASES</u>**  <u>PAGE</u>

*Anderson v. United States,* 417 U.S. 211, 227 (1974)..........................................................................2

*Baker v. Carr,* 369 U.S. 186, 208 (1962) ...........................................................................................2

*Bush II, 531 U.S. at 105*........................................................................................................................2

*Cooper v. Aaron,* 358 U.S. 1, 78 S. Ct. 1401 (1958).......................................................................14

*Elmore v. McCammon* (1986) 640 F. Supp. 905 ...............................................................................3

*Jenkins v. McKeithen,* 395 U.S. 411, 411, 421 (1959) ......................................................................3

*Lujan v. Defenders of Wildlife,* U.S. 112 s.Ct. 2130, 2136, 119 L. Ed.2d 351 (1992)....................3

*Picking v. Pennsylvania R. Co.,* 151 Fed 2nd .....................................................................................3

*Pucket v. Cox,* 456 2nd 233..................................................................................................................3

*Reynolds,* 377 U.S. at 561-62 .............................................................................................................2

*Sherer v. Cullen,* 481 F 946...............................................................................................................14

*United States v. Thorckmorton,* 98 U. S. 61 ....................................................................................15

*Wesberry v. Sanders,* 376 U.S. 1, 10 (1964) ......................................................................................2

**STATUTES**

LRS 18:1353............................................................................................................6

LRS 18:1361............................................................................................................7

LRS 18:1363............................................................................................................1

LRS 18:424.............................................................................................................7

LRS 18:158.............................................................................................................1

LRS 18:18..............................................................................................................1

LRS 18:1351...........................................................................................................1

LRS 44:1(A)(3)........................................................................................................1

LRS 36:741.............................................................................................................1

LRS 44.31..............................................................................................................1

LRS 44.35..............................................................................................................1

## OTHER AUTHORITIES

28 U.S.C. §1252 (a) .................................................................................................1

42 U.S.C. §15371(b) .............................................................................................8, 9

52 U.S. Code § 20971(c)(2) .......................................................................................6

52 U.S. Code §20511(2) ...........................................................................................14

52 USC Ch. 207 §20701 ....................................................................................1, 12, 13

52 USC Ch. 207 §20705 .......................................................................................1, 12

HAVA § 231(b)(2)(B) ...............................................................................................9

HAVA §15371(b) .................................................................................................8, 9

HAVA § 231(b)(1) ....................................................................................................9

HAVA of 2002 Section 231(b) ..........................................................................4, 6, 7, 8, 9

## RULES

LRS 49:956 ..............................................................................................................13

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. XIV, § 1 .................................................................................2

## COMPLAINT AND REQUEST FOR EMERGENCY INJUNCTION

NOW COMES Plaintiff, JACQUES L. SOUDELIER, pro se, hereby file this Complaint against Defendants DEPARTMENT OF STATE LOUISIANA ("DOSL"); R. KYLE ARDOIN in his official capacity as Louisiana Secretary Of State; sued in their official corporate body and capacity (collectively, "Defendants"). In support of the claims set forth herein, Plaintiff(s) allege and aver as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Count I arises under the Louisiana Election Law, R.S. 18: 1353, R.S. 18: 1361, R.S. 18:1363, R.S. 18: 424, R.S. 18:1351, Electronic voting systems.

Count II arises out of Federal Election Records Law 52 USC Ch. 207 §20701, Retention and preservation of records and papers by officers of elections and §20705, Jurisdiction to compel production of records or papers and R.S. 18:158, Record Retention.

2. Plaintiff is a legal resident of the State of Louisiana and was registered voter in the State of Louisiana during the November 3, 2020, election, and voted.

3. Defendants are custodians of public records as defined in R.S. 44:1(A)(3) and created in R.S. 36:741, having custody, responsibility and control of public records.

Defendant DEPARTMENT OF STATE LOUISIANA referred henceforth as ("DOSL"); is a public entity and body corporate responsible for performing the functions of the secretary of state as provided by law, including those functions of the commissioner of elections transferred to the DOSL and to the secretary of state, which included the implementation of all official election laws, policies, regulations, and procedures in effect for the entire State of LOUISIANA as defined in R.S 36:741.

Defendant R. KYLE ARDOIN The Louisiana Secretary of State is one of six state officials named by the Louisiana Constitution to form the Executive Department of the State. The Secretary of State serves as the Chief Election Officer for Louisiana assisting parish election officials and ensuring the uniform application and interpretation of election laws throughout Louisiana. "The secretary of state shall administer the laws relating to custody of voting machines and voter registration," R.S. 18:18.

4. This Court has jurisdiction over the subject matter of this complaint and venue is proper, pursuant to 28 U.S.C. §1252 (a), R.S. 36:741, R.S. 44.1, R.S. 44.31, and R.S. 44.35. The United States Federal District Court, 5th Circuit, has exclusive authority over this complaint. There exists an actual and justiciable controversy between Plaintiff and Defendant(s) requiring resolution by this Court. Plaintiff has no adequate remedy at law.

1

## GENERAL ALLEGATIONS

Plaintiff incorporates the foregoing paragraphs as if set forth in full herein.

Plaintiff brings this complaint to preserve the integrity of Louisiana elections and the voting systems and machines purchased and used for Louisiana elections since 2017 and partially in the election of November 3, 2020. As the United States and Louisiana Constitution protects our first amendment rights, including the right to petition the government to seek resolution for grievances. Plaintiff has not received justice in the matter of the 2020 election and has been forced to utilize the same uncertified voting machines for the **March 20, April 24, June 12, November 13, and December 11 elections of 2021, and 2022 special elections prior to the upcoming 2022 November 8 and December 10th elections.** Plaintiff seeks redress for the abuse and devastation of his Constitutional rights and protections from our elected officials. **Plaintiff,** one of The People of the sovereign State of Louisiana that have addressed both houses of the Louisiana State Legislatures, the Voting Systems Commission, the Commissioner of Elections, Clerks of Courts, Registrars of Voters, parish election commissioners, Attorney General Jeff Landry and the Louisiana Secretary of State Office, and have found no relief. Plaintiff has been called a conspiracy theorist and labeled a domestic terrorist by the U.S. D.O.J. Yet, Plaintiff remains undaunted to seek redress for the violation of his rights.

> "In my humble opinion, those who come to engage in debates of consequence, and who challenge accepted wisdom, should expect to be treated badly. Nonetheless, they must stand undaunted. That is required. And that should be expected. For it is bravery that is required to secure freedom."
> -- **Clarence Thomas**

I come before this court with the acquired knowledge that I am free solely on paper. I have exercised my constitutional rights to duly elect state and federal officials who have been ineffective in their official capacity due to lack of integrity and accountability. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 10 (1964).

Lawful elections are the backbone of our local, state, and national government. The right to vote is protected by the Equal Protection Clause and the Due Process Clause. U.S. CONST. amend. XIV, § 1, cl. 3-4. Because "the right to vote is personal," *Reynolds,* 377 U.S. at 561-62. "[e]very voter in a federal … election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted." *Anderson v. United States,* 417 U.S. 211, 227 (1974); *Baker v. Carr,* 369 U.S. 186, 208 (1962). Invalid or fraudulent votes debase or dilute the weight of each validly cast vote. *Bush II, 531 U.S. at 105.* The unequal treatment of votes within a state, and unequal standards for processing votes raise equal protection concerns.

Justice Thomas wrote in his Dissent regarding The *State of Texas v. Pennsylvania*: "Here, we have the opportunity to do so almost two years before the next federal election cycle. Our refusal

2

to do so by hearing these cases is befuddling. One wonders what this Court waits for. We failed to settle this dispute before the election, and thus provide clear rules. Now we again fail to provide clear rules for future elections. The decision to leave election law hidden beneath a shroud of doubt is baffling. By doing nothing, we invite further confusion and erosion of voter confidence. Our fellow citizens deserve better and expect more of us. I respectfully dissent" *State of Texas vs. Commonwealth of Pennsylvania, State of Georgia, State of Louisiana, and State of Wisconsin (2020).* Justice Thomas went on to say; "the court was thought to be the least dangerous branch and we may have become the most dangerous." He furthered warned against, "destroying our institutions because they don't give us what we want, when we want it"

Plaintiff believes he deserves better, and she expects more from our elected and appointed officials in the judicial, executive, legislative and local branches.

Were our elections in Louisiana transparent? They were not and are riddled with inconsistencies, lack of forthcoming information from parish and state officials, discrepancies between parish and state versions, uncertified software versions, unaccredited (VSTL)s, as well as Louisiana and HAVA 2002 violations. Plaintiff brings this case forward to protect first amendment constitutional rights expressed through voting and "It is the duty of the courts to be watchful for the Constitutional rights of the citizen and against any stealthy encroachments thereon." [Boyd v. United States, 116 U.S. 616, 635].

## STANDING

Plaintiff has standing under; *Lujan v. Defenders of Wildlife,* U.S. 112 s.Ct. 2130, 2136, 119 L. Ed.2d 351 (1992) and *Elmore v. McCammon* (1986) 640 F. Supp. 905 "…. the right to file a lawsuit pro-se is one of the most important rights under the constitution and laws." "Allegations such as those asserted by the petitioner, however in artfully pleaded, are sufficient" …" which I hold to less stringent standards than formal pleading drafted by a lawyer."

*Jenkins v. McKeithen,* 395 U.S. 411, 411, 421 (1959); *Picking v. Pennsylvania R. Co.,* 151 Fed 2nd; *Pucket v. Cox,* 456 2nd 233 Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same standards of perfection as lawyers." The plaintiff's civil rights pleadings were 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe the Plaintiff's Pleadings without regard to technicalities."

(a) (1) Plaintiff has suffered "injury in fact" as protected interest was actual or imminent, concrete and particularized.
(2) The 14th amendment protects his right to vote. Plaintiff was a registered voter during the national election of 2020 and Louisiana Special Elections on February 6, 2021, March 20, 2021, June 12, 2021, and November 13, 2021.
(3) Defendants failed to meet required legally established laws to ensure a free and fair election injuring the Plaintiff and all Louisianans.

3

## COUNT I
## DECLARATORY JUDGMENT
## UNACCREDITED ELECTRONIC VOTING SYSTEMS
## VIOLATION OF LOUISIANA ELECTION LAWS & HAVA ACT

## UNACCREDITED VOTING SYSTEM TEST LABORATORIES[1]

20. Plaintiff incorporates the allegations of all foregoing paragraphs.

21. The Voting System Test Laboratories further known as (VSTL), Pro V&V; U.S. Election Assistance Commission further known as (EAC) were not accredited test labs according to HAVA of 2002 **(Exhibit I)** Section 231(b)  and the Voluntary Voting System Guidelines (VVSG) **(Exhibit J).** Voting System Test Laboratory Program Manual (VSTL) (eac.gov) **(Exhibit K)**, EAC Testing and Certification Program. **(Exhibit L)**

22. Per the (VSTL) Voting System Test Laboratory Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1. Certificate of Accreditation: A Certificate of Accreditation shall be issued to each laboratory by vote of the Commissioners. The certificate shall be signed by the CHAIR of the Commission and state:

   - "3.6.1.3. The effective date of the certification, which shall not exceed a period of two (2) years."
   - So not just the date is important but the signature on the Lab Certification of Accreditation is very crucial.
   - Commission Chairman only serve one (1) year, but their signature is good on these certificates for two (2) years.

Both Donald Palmer AND Benjamin Hovland were appointed by President Trump and confirmed in the senate on Feb. 4, 2019, as EAC Commissioners but not Chairman[2]. Donald Palmer was elected Commission Chairman Feb. 24, 2021[3]. Benjamin Hovland was appointed Commission Chairman Feb. 2020[4].

Neither of the above could be valid signatures on the Laboratory Certificates of Accreditation since none were issued in 2020.

---

[1]
https://www.sos.la.gov/ElectionsAndVoting/ReviewAdministrationAndHistory/Pages/default.aspx
[2] https://www.eac.gov/news/2019/02/06/commissioners-hovland-palmer-sworn-restore-quorum-eac
[3] https://www.eac.gov/news/2021/02/24/donald-palmer-begins-term-eac-chairman
[4] https://www.eac.gov/news/2020/02/27/benjamin-hovland-begins-term-eac-chairman

23.    Christy McCormick was elected as Commission Chairwoman on Feb. 24, 2019[5]. For the 2020 General Election, Christy McCormick signature should be on ALL EAC Laboratory Certificates of Accreditation.

24.    The (VSTL) program requires certified laboratories to submit an application package to the Program Director, consistent with the procedures of Section 3.4, no earlier than **60 days** before the accreditation expiration date and no later than **30 days** before their accreditation expire. Pro V&V did not submit an application prior to the expiration date in 2015 and 2017 respectfully. The EAC and the Program Director were remiss in their duties in acknowledging the expiration of certification. The Defendants **were in violation of Louisiana statute in not acknowledging the expiration of certification and thereby allowing voting machines to be used in statewide elections.** What is confirmed is that Pro V& V was not accredited (VSTL). (VSTL) (Version 2.0 Section 3.8)

25.    ProV&V EAC Certification, Issued February 24, 2015, Effective Through February 24, 2017. **(Exhibit M)**

ProV&V EAC Certification, Original Issued February 24, 2015, Dated February 21, 2021. (Exceeding, more than two (2) years) **(Exhibit N)**

Pro V&V from the EAC-Memo date January 21, 2021, stating Covid-19 circumstances. According to (VSTL) Version 2.0 Section 3.8; the application package would have been submitted at the latest date of January 2017- **"PRE"** Covid-19 pandemic. **(Exhibit O)** (*emphases added)* "Pro V&V has completed all requirements to remain in good standing with the EAC's Testing and Certification program per section 3.8 of the Voting System Test Laboratory Manual, version 2.0: Expiration and Renewal of Accreditation. A grant of accreditation is valid for a period not to exceed two years. A (VSTL)'s accreditation expires on the date annotated on the Certificate of Accreditation. (VSTL)s in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. (VSTL)s in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5. Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed for an extended period. While this process continues, Pro V&V retains its EAC (VSTL) accreditation."

27.    EAC Memo posted to website July 22. 2021. **(Exhibit S)**

28.    "Pro V&V was accredited by the EAC on February 24, 2015. Federal law provides that EAC accreditation of a voting system test laboratory cannot be revoked unless the EAC Commissioners vote to revoke the accreditation: "The accreditation of a laboratory for purposes of this section may not be revoked unless the revocation is approved by a vote of

---

[5] https://www.eac.gov/news/2019/02/22/mccormick-elected-new-eac-chairwoman

5

the Commission." 52 U.S. Code § 20971(c)(2).

The EAC has never voted to revoke the accreditation of Pro V&V. Pro V&V has undergone continuing accreditation assessments and had new accreditation certificate issued on February 1, 2021."

"3.6.1.3. The effective date of the certification, which shall not exceed a period of two (2) years." To revoked is the process of "taken away". The accreditation was not "taken away". The Voting System Test Laboratory Program Manual outlines a process that must be followed to request a renewal starting not earlier than 60 days prior to expiration and not later than 30 days.  Pro V&V was required to submit an application to renew their accreditation no later than January 24th, 2017 (Pro V &V).

The EAC is required to vote on reaccreditation with the presence of a quorum. There was no quorum for a year prior to 2020. Accreditation would not have been possible in order to be in accordance with HAVA of 2002 Section 231(b) and the Voluntary Voting System Guidelines in clear violation of law. Quorum was required well before any real or perceived complications due to COVID-19. 52 U.S. Code § 20971(c)(2) is not applicable to 3.6.1.3 and the effective date of the accreditation as the accreditation EXCEEDED the period of two (2) years.

The statute does not refer to continued accreditation due to any failure of action by the private laboratories and or EAC Program Director. This is erroneous reasoning at best, fraud at worst. Pro V&V was not an accredited laboratory in accordance with HAVA of 2002 § 231(b).

The EAC is not a legislative body and cannot create or establish law but must abide by HAVA of 2002. This is an overreach of power and dereliction of duties by disregarding the law set forth by HAVA of 2002 Section 231(b) and the federal legislative body.

29 A.   In the fall of 2019, all Louisiana voters used ImageCast X (or "ICX") voting system leased from Dominion Voting Systems per Louisiana Secretary of State Administration And History. **(Exhibit T)** https://www.sos.la.gov/ElectionsAndVoting/ReviewAdministrationAndHistory/Pages/default.aspx

29 B.   Voting systems in Louisiana must be EAC certified according to the Louisiana Election laws:

- R.S. 18:1353.
    "Voting system" means the total combination of equipment, including voting machines, used to define ballots, cast and count votes, report or display election results, and maintain and produce any auditable data and the software, firmware, hardware, and documentation required to program, control, and support such equipment. "Voting system" also includes the vendor's practices and documentation used to identify system components and versions of such

6

components, test the system during its development and maintenance, maintain records of system errors and defects, determine specific system changes made after initial certification, and make available any materials to the voter.

- R.S. 18:1361.
  Approval of voting systems or system components; certificate; expenses of examination

  A. The secretary of state may examine any type or make of voting system or system component upon the request of a representative of the maker or supplier thereof. If the secretary of state determines that the voting system or system component complies with the requirements of this Chapter and that it meets standards acceptable to him as to durability, accuracy, efficiency, and capacity, he shall approve that voting system or system component for use in this state and shall issue his certificate of approval thereof. Any voting system procured or used in the state shall include a sound-creating device which will audibly indicate that a voter has left the machine after casting his vote and allow for the challenge removal of early voting ballots and may include a voter verification mechanism. In addition, any voting system or system component procured or used in the state must have been certified according to the voluntary voting system guidelines developed and maintained by the United States Election Assistance Commission by a voting system test laboratory accredited by the United States Election Assistance Commission. This certificate, together with any relevant reports, drawings, and photographs, shall be a public record.

- R.S. 18:1363.
  B. The secretary of state may employ experts to assist him in making the examination provided for in this Section. The expenses of the services of such experts, not to exceed a total of five hundred dollars, shall be paid prior to the examination by the person requesting examination of the voting system or system component. Experts employed in the examination shall sign the certificate of approval made by the secretary of state. No voting system or system component shall be used at any election which has not been approved by the secretary of state as provided in this Section.

- R.S. 18:424.
  C. Powers and duties. (1) The commissioner-in-charge shall receive the sealed key envelope from the deputy parish custodian of voting machines at least thirty minutes before the polls open on election day. The commissioner-in-charge shall administer the oath to the commissioners and preside over the election, the printing of the results from the voting machines, and the closing of the polling place. He also shall deliver the keys to the voting machines, if applicable, the original of the machine certificates, the original of the signed list of commissioners, results cartridges, and one of the official election results reports to the clerk of court.

7

30 A.  On December 16, 2021, Dr. Alex Halderman a cybersecurity expert from Michigan State University, testified before the Louisiana Voting Systems Commission and the Louisiana Secretary of State R. Kyle Ardoin.  He asserted that all of Louisiana's current voting machines were vulnerable to hacking, leading to machines that could be "programmed to misprint voters' ballots, alter votes by printing different choices than the voter selected, and/or alter barcodes." Source LA Senate Archives beginning at time 35:50 https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/12/121421vscp2

30 B.  On June 29, 2022, during the Louisiana Voting Commission Meeting, Secretary of State R. Kyle Ardoin discussed with Dominion Voting that the voting machine vulnerabilities listed in a Halderman report have been under seal since December 2021.  Further discussions revealed that Louisiana's contract with Dominion requires that Dominion advise the Secretary of State when any known vulnerabilities have been reported, but because of the ongoing lawsuit, this advisement had not been relayed as of the commission meeting date.  Secretary Ardoing then states that the Department of Homeland Security declared that voting systems were critical infrastructure in 2017, that he has conducted multiple elections since December 2021 when the Halderman report was completed, and that he is handicapped by the actions of a federal judge (Judge Amy Totenberg) and a federal government (CISA).  This meeting exposed the fact that the Secretary of State Ardoin has not had control of our elections for a currently indeterminant time period.  Source LA Senate Archives beginning at 3:42:50 https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2022/06/062922VSC

The machines' vulnerabilities are acknowledged despite having documentation as to their certification by EAC and subsequently certified by the Louisiana Secretary of State who asserted that they passed testing for their "durability, accuracy, efficiency, and capacity."

"Words do have a limited range of meaning, and no interpretation that goes beyond that range is permissible." --Antonin Scalia, From 1995 speech at Stanford University[6]

"In the beginning was the Word, and the Word was with God, and the Word was God." John 1:1, Holy Bible, Public Law 97-280 – October 4, 1982 – 97th Congress Declares Bible "the Word of God" (Exhibit U)

---

[6] https://time.com/4220735/antonin-scalia-dead-quotes-opinions/

8

## HAVA ACT
## ELECTION SOFTWARE WHISTLEBLOWER

33.    The Affidavit of Terpesehore Maras attesting the 2017 elections is null and void due to lack of Election Assistance Commission (EAC) certifications of Voting Systems and the Voting System Test Laboratories ((VSTL)) used to certify the Voting Systems. (Maras - Exhibit Q)[7] (Attached hereto as **Exhibit W**) in violation of the HAVA Act.

RULE: Section 231(b) of the Help America Vote Act (HAVA) of 2002 (42 U.S.C. §15371(b)) requires that the EAC provide for the accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards. Generally, the EAC considers for accreditation those laboratories evaluated and recommended by the National Institute of Standards and Technology (NIST) pursuant to HAVA §231(b)(1). However, consistent with HAVA § 231(b)(2)(B), the Commission may also vote to accredit laboratories outside of those recommended by NIST upon publication of an explanation of the reason for any such accreditation.

To meet its statutory requirements under HAVA §15371(b), the EAC has developed the EAC's Voting System Test Laboratory Accreditation Program. The procedural requirements of the program are established in the proposed information collection, the EAC **Voting System Test Laboratory Accreditation Program Manual**. Although participation in the program is voluntary, adherence to the program's procedural requirements is mandatory for participants. The procedural requirements of this Manual will supersede any prior laboratory accreditation requirements issued by the EAC. This manual shall be read in conjunction with the EAC's Voting **System Testing and Certification Program Manual** (OMB 3265-0019).

ARGUMENT: The person filing the affidavit is over the age of 21 and under no legal disability which would prevent them from giving this declaration. The election software whistleblower has extensive experience gathering foreign intelligence in support of operations which took place within the Continental United States (CONUS) and Outside the Continental United States (OCONUS). She is a trained Cryptolinguist, holds a completed degree in Molecular and Cellular Physiology with formal training in other sciences such as Computational Linguistics, Game Theory, Algorithmic Aspects of Machine Learning, and Predictive Analytics. Terpesehore Maras possess more than two decades of experience in mathematical modeling and pattern analysis as well as lesser experience in network tracing and cryptography. Additionally, she has extensive involvement in overseeing OCONUS elections and the HAVA Act for CONUS elections. The information presented in the affidavit is personal, first-hand account.

Voting Systems rely on foreign made Commercial Off The Shelf (COTS) components rather than custom components manufactured in the United States. While this presents an affordable and economic solution to meet the voting demand, it also means these COTS components introduce vulnerabilities into the Voting Systems. These vulnerabilities can take the form of proprietary hardware and software, that has not been through vulnerability testing, manufactured in countries that have strained political and economic relations with the United States. There are numerous

---

[7]https://storage.courtlistener.com/recap/gov.uscourts.wied.92717/gov.uscourts.wied.92717.9.13.pdf

intelligence reports, both US Government and Commercial-sourced, highlighting the vulnerabilities in hardware and software components manufactured by foreign countries. (See Exhibit Q for detailed explanation of COTS)

Two companies in particular are Huawei and Akamai, the latter of which is partnered with SCYTL which is linked to Dominion Software. SCYTL receives the tallied votes on behalf of Dominion and, under contract with Associated Press (AP), provides the results for reporting. This shows that voting information is under the control of the companies that provide the Voting Systems.

A further vulnerability are the algorithms which, under the guise of posing as encryption methodologies, provide a means by which votes can be changed. This process will be summarized below.
Observation made during the 2020 election:

- Step 1: A ballot containing votes is encrypted by Dominion and sent to SCYTL.
- Step 2: SCYTL takes those ballots and using a key generator agreed to by both parties (Dominion and SCYTL) accesses the contents of the encrypted ballots.
- Step 3: The algorithm then re-encrypts the ballots using the same key generator to create a ciphertext such that the encrypted processed ballots appear as the original from Dominion.
- Step 4: Decryption and public release of the vote tallies.

This means that SCYTL can read the contents of each ballot because it uses the same key as Dominion to encrypt/decrypt. This key provides access to the "commitments" which are the values of the votes cast. In the 2020 Presidential election there would have been commitments for Trump and for Biden. Those commitment values can be altered by SCYTL, re-encrypted using the same key and appear as though nothing has been changed. When challenged they fake a proof of ciphertexts.

The issue with this is randomness of votes. During the 2020 election, there were periods where blocks of votes for Biden were seen without any votes for Trump. That is statistically improbable and points to block allocation of votes to one candidate by the algorithm. This was witnessed when there were massive spikes of votes for Biden in certain geographical locations instead of the natural progression.

It is further attested of first-hand knowledge by the Obama-Biden administration to deploy this same election software in [redacted] in 2013. Further, on or about April 2013, a one-year plan was set to fund and introduce elections in [redacted]. Joe Biden was designated by

Barack Hussein Obama to ensure the [redacted] accepted assistance. John Owen Brennan and James Clapper were responsible for the ushering of the intelligence surrounding the elections in [redacted]. Under the guise of Crisis support the US Federal Taxpayers funded the deployment of the election software and machines in [redacted] signing on with SCYTL.

Using the same process outlined above, SCYTL was allowed to tally the votes rather than the election machines. The elections were held on May 25, 2014, but the results were delayed allowing the election results to be modified in favor of [redacted]. There was a false claim of Russian DDoS

when in fact it was an injection of block votes.

In the case of the US elections, Dominion, ES&S, Smartmatic, Hart Intercivic would have to manually deploy keys if remote access to Voting Systems failed. This occurred nationwide for days and in the case of Alaska, with a mere 300,000 registered voters was stuck at 56% reporting for nearly a week. This indicates a failed deployment of a script to block allocate votes remotely from one location. This would also justify the presence of the election machine software representatives making physical appearances in states where election results are being contested.

Therefore, accredited (VSTL)s are so important to the election process. This also underscores why it is imperative (VSTL)s maintain their accreditation to ensure compliance with and adherence to updated standards.  Pro V&V is accredited.

Pro V&V is owned and operated by Ryan Jackson "Jack" Cobb and headquartered out of Huntsville, AL, USA. (See Exhibit Q regarding ties to Aerospace Defense Contracting Entity and address discrepancies)

Pro V& V lacks evidence of EAC Accreditation as per the Voting System Testing and Certification Manual. Certifications expired in 2017 for (VSTL)s and for Voting Systems as well. This means the Voting Systems used in the 2020 elections were not certified.

CONCLUSION: This affidavit presents unambiguous evidence of:
   a. Foreign interference
   b. Complicit behavior by the previous administrations from 1999 to present to hinder the voice of the American people
   c. Knowingly and willingly colluding with foreign powers to manipulate the outcome of the 2020 election
   d. Foreign nationals, through investments and interests, assisted in the creation of the Dominion software
   e. Akamai Technologies merged with a Chinese company that makes and distributes the COTS components of election machines
   f. US persons holding an office and private individuals knowingly and willingly oversaw fail safes to secure our elections.
   g. The EAC failed to abide by standards set in HAVA ACT 2002
   h. The IG of the EAC failed to address complaints since their appointment regarding vote integrity
   i. Christy McCormick of the EAC failed to ensure that EAC conducted their duties as set forth by HAVA ACT 2002
   j. j. Both Patricia Layfield (IG of EAC) and Christy McCormick (Chairwoman of EAC) were appointed by Barack Hussein Obama and have maintained their positions since then k. The EAC failed to have a quorum for over a calendar year leading to the inability to meet the standards of the EAC.
   k. AKAMAI Technologies and Hurricane Electric raise serious concerns for NATSEC due to their ties with foreign hostile nations

"For the people of the United States to have confidence in their elections our cybersecurity

11

standards should not be in the hands of foreign nations

"Those responsible within the Intelligence Community directly and indirectly by way of procurement of services should be held accountable for assisting in the development, implementation, and promotion of GEMS" (Dominion Software Foundation)

"In my opinion and from the data and events I have observed [redacted] with the assistance of SHADOWNET under the guise of L3-Communications which is MPRI. This is also confirmed by us.army.mil making the statement that ShadowNet has been deployed to 30 states which all happen to be using Dominion Machines."

"Based on my research of voter data – it appears that there are approximately 23,000 residents of a Department of Corrections Prison with requests for absentee ballot in Wisconsin. We are currently reviewing and verifying the data and will supplement."

Currently a defamation complaint has been filed, Case. No. 1:21-cv 00317-DCLC -CHS in the United States District Court for the Eastern District of Tennessee Chattanooga presiding Judge Clifton L. Cocker. Terpesehore Maras has filed this complaint in regard to defamation in which several defendants have been named regarding the affidavit summarized above. (Maras - Exhibit Q) As this case is in discovery with information forthcoming to confirm Ms. Maras sworn affidavit under penalty of perjury; to be correct and accurate statement of facts pertaining to the "election systems". It would behoove the Defendants to follow this case.

## COUNT II
## DECLARATORY JUDGMENT
## 52 USC Ch. 207 §20701 and §20705
## ELECTRONIC RECORDS RETENTION

34.   Plaintiff incorporates the allegations of all foregoing paragraphs.

35.   §20701[8] Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation.

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico

---

[8]https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/chapter207&edition=prelim

designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

36.    §20705. Jurisdiction to compel production of records or papers.

The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

Plaintiff argues that §20701 and La R.S. 18.158 only requires the preservation of election records/ballots/documentation for the duration of twenty-two months. These documents from the 2020 election are only to be preserved until Saturday, September 3, 2022. La R.S. 18:154 and R.S. 49:956 allows Plaintiff the right to discovery. Plaintiff argues that Defendants have not provided sufficient proof of certification of the machines prior to the November 3, 2020, general election. Plaintiff further argues that Defendants appear to be running out the clock until the date in which records no longer must be preserved in an attempt to cover up the fact that the election machines were not certified and thus in violation of the Louisiana Election Laws and the HAVA Act. which invalidates all of the 2020 Louisiana general election results.

## CONCLUSION

For all the reasons above a complete failure of duty to provide safe and just elections are observed.

## PLAINTIFF(S) FACE DIFFICULT CIRCUMSTANCES

The Department of State Louisiana and the Louisiana Secretary of State fraudulently allowed the people of Louisiana to vote on machines that were not certified in the November 3, 2020, and November 2, 2021, elections. Thereby rendering the results void.

The Defendants continued to certify election results knowingly violated Louisiana civil liberties subsequently entering the Plaintiff into a fraudulent contract with government officials.

Each day, Plaintiff suffers irreparable harm as she lives under a government that no longer represents him and deprives him of democracy that the State of Louisiana and United States Constitution provides as protection from a tyrannical government.

It is my constitutional duty to invoke my authority as a free person to petition and address this

13

court regardless of the outcome of this complaint, it serves as notice to all acting officials and non-officials within our government that I demand justice for any criminal behavior and fraud.

"There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights." *Sherer v. Cullen,* 481 F 946.

"No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." The constitution theory is that we the people are the sovereigns, the state and federal officials only our agents. *Cooper v. Aaron,* 358 U.S. 1, 78 S. Ct. 1401 (1958).

To allow us to vote in another election conducted on uncertified machines is a violation of our 1st and 14th amendment rights and in violation of R.S. 18:2, R.S. 18:18, R.S. 18:572, R.S. 1351, Chapter 8, R.S. 18:1361, RS 18:1366, RS 18:1374. "We the People" stand to lose more of our freedoms as each day passes without resolution.

## PRAYER FOR RELIEF

1. For these reasons, Plaintiff respectfully requests the Court to grant an emergency injunction that none of the voting machines in the state be used for another election and the electronic voting system be replaced with paper ballots beginning with the primary elections of 2022 in the interim.

2. Plaintiff respectfully requests the Court to grant an emergency injunction that none of the data and information of the voting systems and equipment from the 2020 general elections forward be tampered with, nor deleted.

3. Request the Court to compel the Department of State Louisiana and the Secretary of State office to issue a referral of a complaint under 52 U.S. Code §20511(2) to Attorney General Jeff Landry and the Civil Rights Department of the Department of Justice to open an investigation of criminal and fraudulent election violations and allegations henceforth provided in this complaint with the full authority of 52 U.S. Code §20511(2) including but not limited to the impounding of election materials and electronic voting system.

4. Request the Court to compel the Department of State Louisiana and the Louisiana Secretary of State to seek a temporary restraining order, or a writ of injunction obtained through the attorney general to prevent the use of any part of an electronic voting system or electronic voting system equipment as none have been approved per HAVA 2002.

5. For the reasons detailed above; Plaintiff requests the Court order that the Defendants be cited to appear herein and, upon final hearing, that this Court sustain these elections and enter a final judgment directing Governor Edwards to render elections void no later than 10 days after the

14

date of judgment becomes final as "fraud vitiates everything,". *United States v. Thorckmorton*, 98 U. S. 61.

6. Plaintiff asks that this Court grant an emergency temporary restraining order for the Department of State Louisiana and the Louisiana Secretary of State preserve all November 3, 2020, general election records/ballots/documentation,

7. Plaintiff asks that this Court enter an order requiring Defendants to provide to Plaintiff all correspondence relating to *the certification of the electronic voting machines* that are maintained by Defendants as required by RS 44:32 (D) and

8. Any other relief as this Court deems necessary and proper.

Respectfully submitted,

Jacques L. Soudelier, Pro Se
1344 Hickory Ave. Apt B
Harahan, LA, 70123
(985) 709-7755
jacquessoudelier@gamil.com

Dated: August 1, 2022

15

## INDEX OF EXHIBITS

EXHIBIT I    HAVA ACT

EXHIBIT J    Voluntary Voting System Guidelines Version 2.0 (VVSG)

EXHIBIT K    Voting System Test Laboratories Program Manual (VSTL)

EXHIBIT L    EAC Testing & Certification Program Manual


EXHIBIT M    ProV&V EAC Certification, Issued February 24, 2015,
Effective through February 24, 2017

EXHIBIT N    ProV&V EAC Certification, Issued February 24, 2015,
Dated February 24, 2021 (Exceeding, more than two (2) years)

EXHIBIT O    ProV&V Accreditation Renewal Delay Memo January 27, 2021

EXHIBIT S    EAC Memo - Certificates and Accreditation posted July 22, 2021

EXHIBIT T    Dominion Voting Systems in Louisiana

EXHIBIT U    Congress Declares Bible "The Word of God"

EXHIBIT W    Affidavit of Terpesehore Maras