**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JACQUES L. SOUDELIER,
Plaintiff,

Case No. **2:22-CV-02436-SSV-SPC**

v.

DEPARTMENT OF STATE LOUISIANA,
R. KYLE ARDOIN SECRETARY OF STATE
Defendants.
______________________________________/

Jacques L. Soudelier, Pro Se
1344 Hickory Ave. Apt B
Harahan, LA, 70123
(985) 709-7755
jacquessoudelier@gamil.com
______________________________________/

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE AND OBJECTIONS TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff respectfully requests the court to consider the following objections, facts and corrections contained herein to the Defendant's motion to dismiss and transfer served on September 6th, 2022.

**Counts 1 & 2**

Counts 1 & 2 in Defendant's memorandum to dismiss, council's argument is Plaintiff's complaint fails to state a claim upon which relief can be granted and cites lack of cause of action in HAVA and Louisiana statute. The Plaintiff indeed states claims in the prayers for relief in the complaint as follows:

1. For these reasons, Plaintiff respectfully requests the Court to grant an emergency injunction that none of the voting machines in the state be used for another election and the electronic voting system be replaced with paper ballots beginning with the primary elections of 2022 in the interim.
2. Plaintiff respectfully requests the Court to grant an emergency injunction that none of the data and information of the voting systems and equipment from the 2020 general elections forward be tampered with, nor deleted.
3. Request the Court to compel the Department of State Louisiana and the Secretary of State office to issue a referral of a complaint under 52 U.S. Code §20511(2) to Attorney General Jeff Landry and the Civil Rights Department of the Department of Justice to open an

investigation of criminal and fraudulent election violations and allegations henceforth provided in this complaint with the full authority of 52 U.S. Code §20511(2) including but not limited to the impounding of election materials and electronic voting system.

4. Request the Court to compel the Department of State Louisiana and the Louisiana Secretary of State to seek a temporary restraining order, or a writ of injunction obtained through the attorney general to prevent the use of any part of an electronic voting system or electronic voting system equipment as none have been approved per HAVA 2002.
5. For the reasons detailed above; Plaintiff requests the Court order that the Defendants be cited to appear herein and, upon final hearing, that this Court sustain these elections and enter a final judgment directing Governor Edwards to render elections void no later than 10 days after the date of judgment becomes final as "fraud vitiates everything,". United States v. Thorckmorton, 98 U. S. 61.
6. Plaintiff asks that this Court grant an emergency temporary restraining order for the Department of State Louisiana and the Louisiana Secretary of State preserve all November 3, 2020, general election records/ballots/documentation,
7. Plaintiff asks that this Court enter an order requiring Defendants to provide to Plaintiff all correspondence relating to the certification of the electronic voting machines that are maintained by Defendants as required by RS 44:32 (D) and
8. Any other relief as this Court deems necessary and proper.

**Plaintiff also disagrees with the lack of cause of action**. Apparently, so does opposing council by citing "first to file" rule and requests for a transfer. Plaintiff cited various statutes, but the core issue is Plaintiff's 14th Amendment right to an un-diluted vote and right to transparency.

1. Plaintiff has a 14th Amendment right to a secure vote. All claims made by plaintiff reference various laws, statutes, rules, regulations, certifications, and standards that have been created, mandatory or not, to protect the voting rights of plaintiff and all other citizens from dilution of their votes by errors or malicious actors. The requirements set fourth in HAVA, the certification requirements for machines and VSTLs, the VVSG 1.0 and 2.0 guidelines are all the universally accepted standards set fourth and agreed upon by our state and federal elected officials as the minimum requirements to ensure plaintiff's vote is not easily diluted by errors or fraud.
2. "People often speak of the right to vote, there are two voting rights. The first is the electoral franchise: the right to cast a ballot that is tabulated to determine the outcome of elections, a definitive aspect of democratic regimes. The second is a concomitant right for each voter not to have his legitimate vote diluted or cancelled by an illegal vote. In other words, voters have the right to measures that protect and safeguard the integrity of the electoral process and that assure only legitimate votes are counted. The Supreme Court recognized this interest when it declared that ***"the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system."*** [Burdick v. Takushi, 504 U.S. 428 (1992)]. ["*The Other Voting Right: Protecting Every Citizen's Vote by Safeguarding the Integrity of the Ballot Box" by Klukowski and Blackwell Fall 2009 Yale Law & Policy Review.*
3. Failure to abide by the rules and guidelines and certifications set forth by statute open the door to dilute Plaintiff's vote and the refusal of defendant to allow plaintiff and other concerned citizens to examine the data and components of the voting system are fostering distrust and disenfranchisement of plaintiff's voting rights.
4. An insecure voting system, especially one that cannot be easily examined by voters, is

antithetical to safe, secure elections and leave an unacceptable gap for malicious actors. It erodes voter confidence and disenfranchises voters. Any violation of the minimum, universally agreed upon requirements is indeed a violation of plaintiff's, an every voter's, right to a safe and secure election and casting of their votes.

5. Plaintiff comes from the oil & gas and service industries where safety and reliability are paramount. The EAC certification process is the safety inspection of the voting machine world.
6. Defendant selected Pro V&V as their EAC certification company.
7. Pro V&V, and no other entity, was to certify all Louisiana voting machines.
8. Defendant has both explicit and implicit requirements that Pro V&V abided by all certification requirements needed to properly test and certify all machines used in Louisiana elections.
9. Pro V&V's necessary EAC accreditation lapsed after 2017 and was not renewed until 2021. This means all digital voting systems used in 2020 and forward were not legally certified per federal regulations and LA R.S. 18:1361.
10. With a lapsed EAC accreditation, Pro V&V was not legally able to test and certify voting machine equipment.
11. This lack of certification violates the universally agreed upon standards for which defendant chose to adhere to and commit Louisiana to with the expectation it would properly protect plaintiff's right to an unmolested vote.
12. Uncertified machines cannot be used in Louisiana elections and use of such machines without certification taints the results.
13. The commercial nature and international ubiquity of Dominion Imagecast (ICX) platform, and all similar voting machines, is that they are vulnerable to outside attack and the proprietary nature of the hardware and software make it difficult to properly examine, test and secure the system without lengthy litigation that would likely span multiple election cycles. These weaknesses and unacceptable barriers to transparency and security violate of the voting rights of all Louisiana citizens, including plaintiff.
14. ICX platform has proven vulnerabilities so critical that the expert analysis and testimony of Dr. J. Alex Halderman was sealed by Judge Amy Totenberg in Georgia and reported to Cybersecurity and Infrastructure Security Agency (CISA). If they are not serious, why seal it? If they are serious, why hide it? The very act of Judge Totenberg sealing such a critical report creates massive distrust in both the voting systems and in the court system that is supposed to be the place such claims are laid bare for the public to be informed and take proper action regarding election integrity.
15. The full extent of these vulnerabilities must be made known to both Plaintiff and Defendant as they are critical to election integrity and there is no way to have a secure election with such unknowns.
16. Defendant has admitted on multiple occasions the weaknesses and concerns regarding Dominion ICX systems. Despite the known, and still unknown, serious vulnerabilities defendant has and is allowing these systems to be used in Louisiana elections. Plaintiff seeks redress to prevent these admittedly unsafe, insecure systems from further use due to the extreme risk it poses to his voting rights.
17. Defendant also admitted that he has been trying to get the sealed Halderman Report, but has not been successful as of yet. Plaintiff applauds Defendant for pursuing the report, but until Defendant has the report, fully understands its findings, then fully examines every

single ICX machine and associated components for said vulnerabilities; we will have no way of knowing the extent of risk posed to Plaintiff and others right to vote.

18. Defendant's refusal to address this vulnerability is a failure to act on a known threat to public safety and integrity and is a dereliction of duty. These systems are insecure, highly vulnerable to undetectable attacks, and require supervision by expert cybersecurity personnel the Secretary's office has not shown they have without reaching out for Federal help from CISA. If Louisiana cannot properly monitor these systems, Louisiana cannot control them; thus, Louisiana should not use them.
19. VVSG 1.0 was instituted in 2005, Moore's Law states that computing power doubles every 18 months. Since VVSG 1.0 in 2005 computing power and the knowledge and skills of cyber-criminals have increased a hundred-fold. To be frank, 1.0 is bronze armor in an age of .50-caliber rifles, Abrams tanks, and Predator drones. VVSG 2.0 was released in 2019, which was a much-needed update to comparatively prehistoric cyber-security standards.
20. In public testimony all, not some, all major vendors admitted their systems are not VVSG 2.0 compliant and gave no date for when that compliance would be met. 2.0 is the minimum modern standards and NONE of the systems used in Louisiana meet them except one; hand-marked, hand-counted secure paper ballots.
21. According to one of the major voting machine manufacturers, ES&S, VVSG 2.0 systems won't be available until after the 2024 general elections. https://www.essvote.com/faqs/vvsg-2-0-faq/
22. In the world of cybersecurity patching vulnerabilities is time sensitive. Take phone or antivirus updates, which are done immediately after issues are discovered and a fix implemented. This process takes days, weeks at most. From the passage for VVSG 2.0 in 2019 to the first systems being available in 2025 (at the earliest), we have six years. Six more years of voting on insecure, outdated systems and technology. By the time these systems meet 2.0, they and the 2.0 standards, will be as outdated and obsolete as 1.0 is today.
23. Defendant is aware of all the above issues, and more, but has yet to take any concrete action against the vulnerabilities of the ICX machines before we cast our ballots in a few short weeks.
24. On June 29, 2022, during the Louisiana Voting Commission Meeting, Defendant Secretary of State R. Kyle Ardoin discussed with Dominion Voting that the voting machine vulnerabilities listed in a Halderman report have been under seal since December 2021. Further discussions revealed that Louisiana's contract with Dominion requires that Dominion advise the Secretary of State when any known vulnerabilities have been reported, but because of the ongoing lawsuit, this advisement had not been relayed as of the commission meeting date. Secretary Ardoin then states that the Department of Homeland Security declared that voting systems were critical infrastructure in 2017, that he has conducted multiple elections since December 2021 when the Halderman report was completed, and that he is handicapped by the actions of a federal judge (Judge Amy Totenberg) and a federal government (CISA). This meeting exposed the fact that the Secretary of State Ardoin has not had control of our elections for a currently indeterminant time period. Source LA Senate Archives beginning at 3:42:50 https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2022/06/062922VSC
25. Bare minimum, these ICX systems must stop being used, and defendant has known this for quite some time. Yet, defendant is set to carry out another election in November on these

knowingly vulnerable systems. It matters not why defendant is not taking proper steps to address this vulnerability, only that he is not. Thus, plaintiff seeks remedy described in prayer for relief.

**Preservation of 2020 election data.**

1. Plaintiff has made multiple requests for the data in question in the complaint and waited the appropriate time allotted by LA RS 44. Plaintiff has not received any data asked for. The relevant statute in Louisiana is LA R.S. 44. https://www.legis.la.gov/Legis/Law.aspx?d=99632
2. Plaintiff filed his motion in part to have a preservation order issued to prevent Defendant from deleting or otherwise destroying data from the 2020 election that could legally be destroyed after September 3rd, 2022. That date has passed, thus the need for a preservation order is paramount.
3. To date the records requested in the FOIA/LA RS 44 (FOIA) requests have not been supplied to the Plaintiff, and pursuant to 52 U.S.C. § 20701 said disputed records may be subject to being disposed of or destroyed on or after September 3, 2022.
4. The lack of response to plaintiff's request for records is in part why plaintiff filed his complaint.
   a. In failing to allow Plaintiff to inspect or copy Defendant's public records, as listed in Plaintiff's written FOIA requests and as described herein.
   b. In failing to provide Plaintiff with the requested public records once Plaintiff's FOIA were deemed or considered approved after the thirty-day time period had expired; and
   c. In providing no, or only partial and/or redacted, responses or records without valid or proper basis for such refusal and/or redactions.
   d. In improperly and unlawfully failing to produce documents by improperly claiming such materials are not public records subject to disclosure.
   e. In charging obscene amounts (Upwards of $300,000 for cast-vote records, charging) charging printed page rates for data that can and should be copy-pasted to a flash drive so proper digital analysis can be done.
   f. In other such particulars as will be proven through discovery and trial.
   g. Plaintiff asserts all these as violations of his rights to ensure he is casting a safe and transparent vote.
5. Part of suit is to discover the extent of vulnerabilities of ICX and other digital machines as well as examine the totality of 2020 election data to determine if Plaintiff's vote was diluted in violation of his 14th Amendment voting rights. It is reasonable to suspect that this information will lead to the discovery of admissible evidence. Any perceived failure to state a claim is not for lack of injury, but because information that so far has been denied to plaintiff is necessary to determine the extent of any injury.
6. It can be reasonably calculated that the requested information, the Halderman Report, and other information obtained via discovery could contain admissible evidence that could prove in totality plaintiff's claims.

**Plaintiff will suffer irreparable harm if election records are destroyed.**

1. If defendant were to destroy data from the 2020 election while it were under public records requests it would cause irreparable harm to plaintiff and to voter integrity, voter confidence, and disenfranchise every single Louisiana voter.
2. If we lose transparency of our vote and the ability for the public and others to audit our elections, we have no way of verifying our sacred right to elect our officials. We are being denied our constitutional right to free and fair elections and our votes not being counted in secret.

**Defendant agrees with plaintiff that 2020 data must be preserved.**

1. On August 19th, Defendant issued a Records Retention order to elections staff statewide including many of the records requested by Plaintiff.
2. While the court and opposing counsel may consider this action renders Plaintiff's complaint moot, it does not for multiple reasons:
   a. First, the Federal records retention requirement lapsed on September 9th, 2022. Defendant can rescind his order at any time and the files can be deleted and destroyed before Plaintiff even hears of the rescinding.
   b. Second, this order falls under LA RS 18:18 (3) which requires "(3) Prescribe uniform rules, regulations, forms, and instructions, which shall be approved by the attorney general and thereafter shall be applied uniformly by each registrar of voters in the state. These rules, regulations, forms, and instructions shall include but not necessarily be restricted to forms of applications for registration, records, affidavits and statements, documents, and general procedures to be used by the registrars of voters, none of which shall be inconsistent with the constitution and laws of the United States or of this state." The Attorney General has not signed off on this order as of yet, so it does not carry the necessary weight and check and balance of a second elected official. https://legis.la.gov/Legis/Law.aspx?d=81505
   c. Even if LA RS 18:18 requirements were met, a unilateral decision by Defendant while information is under FOIA could destroy all records and with that destroy all confidence Plaintiff's, and any citizen of Louisiana's, vote can be cast safely and unmolested. We are far past the point of "just trust us" in any of these systems or the word of politicians. "Trust but verify" is a timeless adage for a reason.

**Per page 4 of the Defendant's memorandum to dismiss**, argument II The Court should decline supplemental jurisdiction over Plaintiff's state claims. The Plaintiff firmly disagrees.

1. The right of the plaintiff to vote is indeed a Constitutional right, it is only the mechanisms and mechanics of the voting process that are determined by the duly elected state legislators of the state of Louisiana and carried out by Defendant(s) through various policies, procedures, procurement of equipment, etc. This court is the only and proper court of jurisdiction regarding issues of voting rights and voter integrity.
2. Opposing council also cites "first to file" rule in their motion, thus admitting jurisdiction for the suit is proper.

**Per page 6 of the Defendant's memorandum to dismiss**, argument III in the alternative, should the court decline to dismiss Plaintiff's complaint, it should transfer to consolidate. The Plaintiff

realizes this may be more of a formality to include both motions, yet Defendant seems to agree that there is merit to the issues raised, otherwise confidence in their position would need only the motion to dismiss. The request for transfer indicates merit, proper jurisdiction and standing; Plaintiff agrees.

1. While the issues raised by Plaintiff may be similar to *Jerusalem/Jungemann v. Department of State Louisiana*, et al., they are not the same and the injury is individual to each plaintiff.
2. As pro-se, a combining of these cases would force a class action and require an agent of the court or attorney, thus robbing plaintiff of his pro-se rights.
3. It seems opposing council is accusing Plaintiff of forum shopping. Plaintiff is filing in the proper district in which he resides.
4. Opposing council is alleging the different parties filing in separate districts are the same, what hard evidence has opposing council offered of that claim?

Plaintiff would also like to thank opposing council for the brevity of their motion.

Respectfully submitted,

Jacques L. Soudelier, Pro Se
1344 Hickory Ave. Apt B
Harahan, LA, 70123
(985) 709-7755
jacquessoudelier@gamil.com

Dated: September 27, 2022

---

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of September 27, 2022, I filed in person with the court a true and correct copy of the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE AND OBJECTIONS TO DEFENDANT'S MOTION TO DISMISS. In response to Defendant's Motion to Dismiss and Alternative Motion to Transfer. , and a copy has been furnished to all parties or their council by U.S. Mail at the address provided by the collective Defendant's attorney's office.

Jacques L. Soudelier, Pro Se Sui Juris in Propria Persona