UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JACQUES L. SOUDELIER | CIVIL ACTION |
| VERSUS | NO. 22-2436 |
| DEPARTMENT OF STATE LOUISIANA, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is the defendants' motion to dismiss plaintiff's complaint, or, in the alternative, to transfer this action to the United States District Court for the Middle District of Louisiana.[1] Plaintiff opposes defendants' motion.[2] For the following reasons, the Court grants defendants' motion to dismiss.

### I. BACKGROUND

This case arises out of the alleged failure of defendants, the Department of State of Louisiana and R. Kyle Ardoin, in his capacity as Louisiana Secretary of State, to preserve the integrity of Louisiana elections by permitting voters to use voting machines that he contends

---

[1]   R. Doc. 14.
[2]   R. Doc. 17.

are susceptible to hacking.[3] Plaintiff, a Louisiana voter, brings two counts in his complaint.

Count I is premised on purported violations of various Louisiana election laws and the Help America Vote Act ("HAVA"). In support of Count I, plaintiff appears to advance two main arguments: that Louisiana used voting systems in statewide elections, including the 2020 election, that (1) lacked the requisite certification and (2) were vulnerable to hacking.

Regarding certification, plaintiff alleges that voting systems must have certificates of accreditation from the United States Election Assistance Commission (the "EAC").[4] Plaintiff argues that the voting machines used in Louisiana elections lacked the requisite certification because the EAC accreditation for Pro V&V, the EAC certification company defendants selected to certify Louisiana voting machines, had expired.[5] Plaintiff asserts that the EAC is "required to vote on reaccreditation with the presence of a quorum," and there was no

---

[3] R. Doc. 3 at 2.
[4] *Id.* at 9 ¶¶ 21-22.
[5] *Id.*; *see also* R. Doc. 17-1 at 3 ¶¶ 6-9.

quorum for a year before 2020, so the EAC was not eligible to vote on reaccreditation before the 2020 election.[6]

Regarding the voting machines' vulnerability to hacking, plaintiff contends that in the fall of 2019, Louisiana leased voting machines from Dominion Voting Systems.[7] He points to two sources to support his allegation that those machines were vulnerable to hacking. The first is purportedly a cybersecurity expert, Dr. Alex Halderman, who allegedly testified before the Louisiana Voting Systems Commission and defendant Ardoin that Dominion voting systems were vulnerable to hacking. Plaintiff contends that Dr. Halderman issued a report, which supposedly outlines these vulnerabilities, but the report has been filed under seal in a separate lawsuit, which has "handicapped" Ardoin's ability to assess the extent of the vulnerabilities in Dominion voting machines.[8]

Second, plaintiff points to an affidavit by Terpesehore Maras, whom he describes as a "trained cryptolinguist." Plaintiff contends that

---

[6] *Id.* at 11 ¶ 28. Plaintiff appears to use "certification" and "accreditation" interchangeably.
[7] *Id.* ¶ 29A.
[8] *Id.* at 13 ¶ 30B.

Maras testified via affidavit in a separate lawsuit that all votes cast on Dominion machines are sent to an entity called "SCYTL,"[9] which is capable of altering the votes.[10] SCYTL, rather than the machines themselves, allegedly tallied the votes.[11] Plaintiff concludes that Maras's testimony "presents unambiguous evidence of," among other things, foreign interference, "[c]omplicit behavior by the previous administrations from 1999 to present to hinder the voice of the American people," and "collu[sion] with foreign powers to manipulate the outcome of the 2020 election."[12] The Maras affidavit does not appear to implicate the defendants in this case. Rather, it appears to focus on former President Barack Obama, his EAC appointees, and other "US persons holding an office and private individuals."[13] Plaintiff points to the testimony of Maras and Dr. Halderman to show that defendants in this case were aware or should have been aware of vulnerabilities in the Dominion voting machines, and they nevertheless

---

[9]     Plaintiff does not define or give any detail about SCYTL.
[10]    *Id.* at 15.
[11]    *Id.*
[12]    *Id.* at 16.
[13]    *Id.*

4

permitted the machines to be used in statewide elections in light of these issues in violation of the Louisiana Election Code and HAVA.

Count II of plaintiff's complaint is premised on defendants' alleged failure to retain election-related records.[14] Plaintiff contends that defendants have not provided sufficient proof that the machines used in the 2020 election were certified, and that pursuant 52 United States Code § 20701, and La. Rev. Stat. 18:158, defendants need only retain records for 22 months. Plaintiff asserts that defendants are "running out the clock" until they can destroy evidence that the voting machines were not certified, which plaintiff contends "invalidates all of the 2020 Louisiana general election results."[15]

Although the two counts in his complaint refer only to violations of Louisiana statutes, HAVA, and federal election records law,[16] plaintiff also alleges that defendants violated his constitutional right to vote by permitting Louisiana voters to use uncertified voting machines.[17]

---

[14] R. Doc. 3 at 17-18.
[15] *Id.* at 18.
[16] Plaintiff lists these statutes, but nowhere does he explain how defendants' conduct violated them.
[17] *See, e.g., id.* at 13.

In his prayer for relief, plaintiff asks the Court to, among other things, issue an emergency injunction prohibiting the current voting machines from being used in future elections and requiring a return to paper ballots; enjoin defendants from tampering with evidence from the 2020 election; and compel defendants to initiate an investigation into allegedly criminal election violations.[18]

Several weeks after initiating this action, plaintiff moved for a temporary restraining order.[19] His motion for a temporary restraining order appears to be identical to his complaint, with the exception of the document title.[20] The Court denied plaintiff's motion on the grounds that he failed to establish a likelihood of success on the merits because the statutes he invoked in his application do not provide a private right of action.[21] The Court further held that, to the extent plaintiff's motion alluded to constitutional violations, he "failed to plausibly allege a non-conclusory, non-speculative constitutional claim."[22]

---

[18]  *Id.* at 19.
[19]  R. Doc. 4.
[20]  *Id.*
[21]  R. Doc. 13.
[22]  *Id.* at 4.

6

Defendants moved to dismiss plaintiff's complaint for failure to state a claim. In their motion, defendants argue that plaintiff has failed to state a claim because the statutes on which plaintiff relies do not confer a private right of action, and his constitutional claim, if any, is conclusory and speculative.[23] Defendants argue that if the Court dismisses only plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over plaintiff's state-law claims.[24] Defendants argue in the alternative that the Court should transfer this case to the United States District Court for the Middle District of Louisiana, where a case involving a virtually identical complaint is pending.[25]

In his opposition, plaintiff clarifies that "core issue" in his complaint is his Fourteenth Amendment "right to an un-diluted vote and right to transparency."[26] Plaintiff contends that the purpose of his lawsuit is to get discovery that will permit him to "examine the totality

---

[23]   R. Doc. 14-1 at 3-4.
[24]   *Id.* at 4-5.
[25]   *Id.* at 6-7.
[26]   R. Doc. 17 at 1.

7

of the 2020 election data," so that he can determine whether his Fourteenth Amendment rights were, in fact, violated.[27]

The Court considers the motion below.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim.  In ruling on a 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing

---

[27]   *Id.*

the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III. DISCUSSION

Defendants do not raise the issue plaintiff's Article III standing. Nevertheless, when necessary, a federal court must address the issue of standing *sua sponte*. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002) (citations omitted). Article III of the Constitution requires plaintiffs in federal court to allege an actual "case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *see generally* U.S. Const. art. III, § 2 ("The judicial power shall extend to all cases [and] to controversies...."). The case-or-controversy requirement means that plaintiffs "must allege some threatened or actual injury resulting from the [defendants'] putatively illegal action before a federal court may assume jurisdiction." *O'Shea*, 414 U.S. at 493 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).

The party invoking federal jurisdiction bears the burden of establishing that: (1) the plaintiff suffered an "injury-in-fact," which is

9

an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) it is likely that plaintiff's injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiff contends that the "core" of his lawsuit is that his right to vote may have been impermissibly diluted in violation of his Fourteenth Amendment right to vote, because the voting machines used in the Louisiana statewide elections may have been hacked. Plaintiff lacks standing to pursue this claim because he has failed to allege a "concrete and particularized" injury. *Lujan*, 504 U.S. at 560. Plaintiff's purported injury—the possible dilution of his vote in contravention of his Fourteenth Amendment rights—is not particular to him. Rather, the injury he alleges applies equally to every other Louisiana voter. The Fifth Circuit has made clear that such a "generalized claim" does not "warrant standing." *See Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (plaintiffs who asserted that drive-thru voting "hurt the integrity of the election process" lacked standing because they did not "have any

10

other basis for standing that differs from any other Harris County voter").

District courts across the country have consistently dismissed complaints premised on the theory of unconstitutional vote dilution in the aftermath of the 2020 election for this reason. *See, e.g.*, *Grey v. Jacobsen*, No. 22-82, 2022 WL 9991648, at *4 (D. Mont. Oct. 17, 2022) (dismissing complaint because "generalized grievances about . . . election system software allegedly allowing for 'ballot tampering' prove insufficient to grant standing"); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 377 (W.D. Pa. 2020) (complaint that defendants failed to take election safeguards, which increased the risk of voter fraud and the unconstitutional dilution of plaintiffs' votes, did not meet the injury-in-fact requirement for standing); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711-12 (D. Ariz. 2020) ("Plaintiffs have not alleged a concrete harm that would allow the Court to find Article III Standing for their vote dilution claim," which is "a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud."); *Freehan v. Wisconsin Elections Comm'n*, 506 F. Supp. 3d 596, 608 (E.D. Wisc. 2020) (plaintiff who

alleged that the Wisconsin election process was "riddled with fraud, illegality, and statistical impossibility" failed to allege that "he has suffered a particularized, concrete injury sufficient to confer standing").

Like the many other plaintiffs who claimed their votes were unconstitutionally diluted based on issues with the integrity of the 2020 election, plaintiff's purported injury is neither concrete nor particularized; rather, it amounts to a "generalized grievance about the conduct of [the] government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). It is well-settled that such generalized complaints about the operation of the government do not present the kind of controversy that is justiciable in federal court. The relief plaintiff seeks would "no more directly and tangibly benefit [him] than it [would] the public at large." *Lujan*, 504 U.S. at 573-74; *see also Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485 (1982) ("The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries."). Plaintiff's purported injury is also speculative—he concedes that he wants discovery in this case so that he can determine whether or not his vote

12

was, in fact, diluted.[28] *See Lujan*, 504 U.S. at 560 (injury-in-fact may not be "conjectural" or "hypothetical").

It is difficult to discern from plaintiff's complaint and opposition brief whether he purports to have suffered any other injuries aside from the possibility that his right to vote was undermined. To the extent plaintiff suggests that defendants' alleged violations of the various statutes he cites in his complaint are, themselves, injuries, this likewise fails. "It is true that the actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016) (citations omitted). "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Id.* The "standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* The injury-in-fact analysis "for purposes of Article III is directly linked

---

[28] R. Doc. 17 at 1.

13

to the question of whether the plaintiff has suffered a cognizable statutory injury under the statute in question." *Id.*

Here, there can be little doubt Congress did not "create a statutory right or entitlement the alleged deprivation of which can confer standing to sue," *id.*, as the federal statutes plaintiff cites do not confer a private right of action. *See Texas Voters All. v. Dallas Cty.*, 495 F. Supp. 3d 441, 459 (E.D. Tex. 2020) ("HAVA does not create a private right of action."); *Fox v. Lee*, No. 18-529, 2019 WL 13141701, at *1 (N.D. Fla. Apr. 2, 2019) ("In a word, 52 U.S.C. § 20701 does not confer a private right of action on Plaintiffs.").[29]

Because plaintiff lacks standing, the Court lacks jurisdiction to hear his case. Plaintiff's complaint is thus dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

---

[29] In *Wendt*, the Fifth Circuit assumed without deciding that a state legislature, like Congress, could have "the power to elevate otherwise trivial inconveniences to legally cognizable injuries-in-fact." 821 F.3d at 552 n.17. In any event, the Louisiana Election Code likewise does not confer a private right of action to citizens. *See Treen v. Republican Party of La.*, 768 So. 2d 273, 279 (La. App. 1 Cir. 2000) ("[T]he Louisiana Election Code does not provide for a citizens suit, or a 'qui tam action' for the enforcement of regulatory statutes against violators if the district attorney or attorney general fails to enforce the code.").

## IV.  CONCLUSION

For all of the foregoing reasons, defendants' motion is GRANTED. Plaintiff's complement is DISMISSED without prejudice.

New Orleans, Louisiana, this 29th day of November, 2022.

 _____
 SARAH S. VANCE
 UNITED STATES DISTRICT JUDGE